### Michael OFFICER

v.

### TELEDYNE REPUBLIC/SPRAGUE, et al.

v.

### DELTA POWER HYDRAULIC COMPANY.

Civ. A. No. 91–13132–RGS.

United States District Court, D. Massachusetts.

Nov. 16, 1994.

Alan Cantor, Swartz & Swartz, Boston, MA, for Michael Officer.

Robert McLaughlin, McLaughlin, Mooney & Associates, Robert F. McLaughlin, McLaughlin, Mooney & Associates, Wellesley, MA, for Prestress Supply, Inc.

James M. Campbell, William J. Thompson, Campbell & Associates, Professional Corp., Boston, MA, for Tucker's Heavy Equipment Supply, Inc., Charles Tucker.

Natasha C. Lisman, Keith S. Brown, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for Teledyne Republic/Sprague.

Robert J. Kilmartin, Smith, Sullivan, Valentine & Malay, Thomas C. Federico, Mark P. Harty, Morrison, Mahoney & Miller, Boston, MA, for Delta Power Hydraulic Co.

### MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

STEARNS, District Judge.

This case is before the court on defendant Teledyne Republic's (Teledyne) motion for summary judgment against the plaintiff Michael Officer. Delta Power Hydraulic Company (Delta), impleaded by Teledyne as a third party defendant, has also brought a motion for summary judgment against Teledyne. Teledyne's arguments against Delta's motion largely mirror those made by Officer against Teledyne. Both motions for summary judgment will be denied for essentially the same reasons.

The case arose when a hydraulic jack exploded while Officer, an employee of San-Vel, a concrete manufacturer, was working nearby. Officer was seriously injured. The jack had been manufactured by Tucker's Heavy Equipment Service, Inc. (Tucker's) and sold by Prestress Supply, Inc. (Prestress) to San-Vel some ten years before the accident. Critical components of the jack were valves manufactured by Teledyne and Delta.

The cause of the accident is not disputed. Some time prior to the accident, employees of San-Vel attempted to service the jack themselves. In reassembling the valve body, the employees incorrectly repositioned the valve settings regulating the flow of hydraulic fluid. A blockage resulted, causing a build-up of pressure which in turn caused the explosion.

Officer's Complaint alleges that Teledyne failed to warn end users that improper positioning of its valve could have catastrophic consequences. Officer also contends that the Teledyne valve was negligently designed in that its flexible settings invited erroneous adjustments.[1]

Teledyne admits that it did not warn distributors and manufacturers to whom it sold the valve of any potential danger. It does, however, point to the fact that Tucker's Service Manual (which San-Vel received when it purchased the jack) cautions that "field dissembly and repair [of the valve body] should not be attempted because improper procedure can damage the valve body and no core deposit will be allowed."[2] Seizing on this language, Teledyne urges that it was discharged from any duty to warn by Tucker's assumption of the role of "learned intermediary."

The learned intermediary doctrine has been held to excuse drug manufacturers and, in some circumstances, chemical manufacturers, from a duty to warn end users of their products. *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 135–136, 475 N.E.2d 65 (1985); *Burke v. Dow Chemical Co.*, 797 F.Supp. 1128, 1133 (E.D.N.Y.1992). Teledyne, however, points to only one case in which a court has applied the doctrine in a conventional product liability context. The case is *Davis v. Cessna Aircraft Corp.*, 1994 WL 509057 (Ariz.App.Div. 1). Noting that Cessna was a "sophisticated consumer" of (as it happens) Teledyne aircraft engines, the *Davis* court held that Cessna, having been provided by Teledyne with "the engine's complete specifications," should have "understood the possible consequences of infusing fuel into the Teledyne engine at excessive pressure." *Id.* at *12. While the case purports to rest on the learned intermediary doctrine, it plainly confuses the doctrine with the issue of whether the information Teledyne provided was, as a matter of law, sufficient to warn a consumer like Cessna of the risks of engine flooding created by Cessna's

---

1. Teledyne makes similar claims about Delta's valves in its third party complaint.

2. Whether this "warning" would have impressed a reasonable user of the jack with the potential dangers of self-service is at least open to debate.

outfitting its planes with auxiliary high pressure fuel pumps.[3]

While paucity of case law by itself is not a wholly sufficient reason to reject the extension of a legal doctrine (if it were, the law would never evolve), the absence of ready precedent in this case has an explanation in considerations of policy. The learned intermediary rule supposes the predictable existence of such an intermediary. A prescription drug, for example, must be prescribed, and only persons trained in medicine, who are licensed and regulated by the state, are permitted to write prescriptions. So too, only those who are licensed may dispense dangerous chemicals. By contrast, the presence of Tucker's, the "learned intermediary" in this case, is a complete fortuity. Teledyne sold its valves into the stream of commerce with no expectation or guarantee that a manufacturer as sophisticated as Tucker's would materialize as the intermediate buyer. In this regard, the case is not unlike *MacDonald, supra,* in which the Supreme Judicial Court refused to apply the learned intermediary doctrine to the distribution of contraceptives, reasoning that the likelihood of women obtaining and using contraceptives without sufficient instructions or warnings from a physician was relatively high.

With respect to Officer's defective design claim, Teledyne challenges the sufficiency of the opinion of the plaintiff's expert, Darry Holt, a former Teledyne engineer. Teledyne does so on two grounds: first, that the affidavit does not conform to a Rule 56(e) evidentiary format; and second, that Holt's opinion is unbolstered by field tests or other empirical data and thus does not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

▬▬ As to the first argument I do not find Holt's affidavit unsatisfactory. While in a summary judgment context an expert must explain the factual basis and reasoning process that led to his conclusions, the expert need not disclose or recite the details of the raw data on which he relies. See *Hayes v. Douglas Dynamics, Inc.,* 8 F.3d 88, 92 (1st Cir.1993). The second argument confuses "scientific" with "technical, or other specialized knowledge," both of which may be the subject of expert testimony under Fed. R.Evid. 702. *Daubert* does not address the issue of *who* may testify as an expert; it sets rules about *what* may be an appropriate subject of expert testimony. While *Daubert's* principles have valuable application in determining the admissibility of controversial and novel scientific hypotheses, they have less use in fields like design engineering where "general acceptance" is the norm, not the exception. Compare *Mercado v. Ahmed,* 974 F.2d 863, 868–870 (7th Cir.1992). A particular witness may not be qualified to testify to generally accepted principles of knowledge, but that is not the objection raised here.[4]

## ORDER

For the foregoing reasons, defendant Teledyne's motion for summary judgment against plaintiff Officer is *DENIED.* Third party defendant Delta's motion for summary judgment against the third party plaintiff Teledyne is also *DENIED.* The Clerk will set the case for trial at 9:00 A.M., Monday, February 6, 1995.

SO ORDERED.

---

**3.** Perhaps more aptly *Davis* involves a "learned consumer" rule.

**4.** Holt's theory, that Teledyne was negligent in designing a valve with variable settings for use in a hydraulic jack is simple enough in concept to lead one to question whether "expert" testimony on the subject is needed at all. Cf. *Rohde v.* *Lawrence General Hospital,* 34 Mass.App.Ct. 584, 587, 614 N.E.2d 686 (1993). I do not, of course, pass on the merits of the credibility of that theory, or the likelihood that the plaintiff, on the facts as I understand them, will succeed in persuading a jury that Teledyne should be held liable.